May it please the court. Closing counsel, my name is Matt Catlett. I represent Robert Robert Oglesby, who is the appellant in this matter. Could you please adjust the microphone so we can hear you? Sorry, sorry. Yes, okay. This matter is a civil rights action brought by Mr. Oglesby against a City of Lincoln police officer, Chad Hine, and a Lancaster County, Nebraska Sheriff's Deputy named Amy Lesan. These events arise from, well, the claim arises from some events that occurred on January 28, 2013. I guess the first issue to the appellant's position is that the district court erred in granting summary judgment in favor of Hine and Lesan as to all claims, incorrectly ruling that Lesan did not seize Oglesby in Hickman, Nebraska, incorrectly ruling that there was probable cause to arrest Oglesby at his residence, and incorrectly ruling that Hine and Lesan were entitled to qualified immunity as to Oglesby's excessive force claims against them on the basis that he did not have a clearly established constitutional right to be free from the force applied. Our position is that Oglesby did present sufficient evidence to establish a genuine dispute of material fact as to whether Lesan seized Oglesby in Hickman without justification, presented sufficient evidence to establish a genuine dispute as to whether Hine and Lesan arrested him at his home in Lancaster County, Nebraska, without probable cause, and presented sufficient evidence to establish a genuine dispute as to whether Hine and Lesan used excessive force in arresting him. Our position is that neither Hine nor Lesan are clearly established constitutional rights, and it is also our position that the district court erred in relying on improper and inadmissible evidentiary materials presented by Hine in their motions for summary judgment. The major issue in this case, I guess, concerns the United States Supreme Court's holding in Virginia v. Moore, and then this court's holdings in a couple of cases, City of Mulberry, Arkansas v. Rose, and a case arising out of the state of Nebraska, Marksmeyer v. Davey. Virginia v. Moore, of course, this involves a couple of Virginia state or local police officers who . . . We know the case. What's your argument? In any event, as the Supreme Court held that regardless of Virginia law restricting the ability of municipal officers to arrest a person suspected of driving without a driver's license, because the offense was committed of operating a vehicle without a license or with a suspended license in their presence, it didn't matter that Virginia law, for purposes of the Fourth Amendment, it didn't matter that Virginia law purported to prohibit these municipal officers from making this arrest, that they had to issue a citation as opposed to making an arrest. Therefore, his conviction was not suppressed. Marksmeyer, City of Rose v. Mulberry, again, same kind of issue. It's a municipal cop that doesn't have the authority to make stops on state highways under Arkansas law, makes a stop on a state highway. Again, this court says, Virginia v. Moore says, hey, offenses committed in the presence of the arresting officer are per se reasonable under the Fourth Amendment. Marksmeyer is a little bit different. Now, the issue in Marksmeyer was, of course, as I argue in my brief, this rested upon this business of whether the officer who arrested the the suspect was on duty. There was no doubt about it that he was an authorized law enforcement officer of the jurisdiction in which the arrest was made. The argument was is that he was not on duty. He apparently had, he was an officer in one jurisdiction and an officer in another jurisdiction. There was no doubt about it. The offense occurred in jurisdiction one, the arrest was made in jurisdiction two, but the key thing in Marksmeyer was that the arrest, that the arresting officer was an officer of the jurisdiction in which the arrest was made. The argument that was made by the plaintiff in Marksmeyer was that, well, he wasn't on duty at the time, but the Nebraska statute that I have cited quite a bit in my brief, Nebraska revised statute 29-215, did not make any distinction between an officer being on duty or off duty. What's your argument? You've spent a lot of time summarizing other cases. Do you have an argument about why the district court erred? Yeah, I mean, our argument is that what happens is that Oglesby, you know, he goes out to Hickman. He gets a call from a friend. She says, pick me up. He goes out there. He picks her up. The sheriff's deputy pulls up behind him. Starts giving him commands. Produce your license. Produce your registration. He complies, and then she hands him the documents back and starts asking him questions about what he's going to do, and he's like, it's none of your business what I'm going to do. She tells him that, well, there's a... All right, now you're telling us the facts of the case, which we've also read, but... Okay, well, the argument is that there's no... The district court found that the probable cause to arrest Oglesby existed because he had violated a City of Lincoln ordinance that prohibits the refusal to comply with an order given by a police officer. He wasn't in the City of Lincoln. I mean, he wasn't inside the City of Lincoln at the time this order was given. This officer wasn't acting pursuant to any authority that he had under 29215. This is not a situation where the officer sees him committing a crime in his presence, this City of Lincoln police officer, Chad Hine. He just... I mean, Oglesby is in his yard. He's walking to his house. He drives these, you know, whatever, 17 or 18 miles from Hickman. All the while, this deputy's following him. He's not chasing him. He's not fleeing. He pulls into his driveway. He gets out of the car. The passenger walks away. He starts walking to his house. He gets in his yard. Hine, who he didn't know was a cop but suspected might be after he sort of saw him, a city cop, says, hey, you know, you know, I'd like you to come here. And that, and there's factual disputes about whether or not Hine said, sign this ticket, or I need you to sign this ticket, or something like that. But the bottom line is that a City of Lincoln police officer who was on Oglesby's property, Oglesby was in his yard, and our position is that the district court erred in finding that there was probable cause, and that was the only basis that the district court found there was probable cause to arrest Oglesby, was because that Oglesby was was refusing to comply with an order given by a police officer. Well, it turns out that in the state of Nebraska, there is no state statute that prohibits refusing to comply with an order given by a police officer. The closest is a state, it's found in the motor vehicle statute, says that a person, you know, shall not refuse to comply with an order given by a police officer at the scene of a investigation for violation of the rules of the road, or in apprehension of the rules of the road. The only other equivalent state statutes are the resisting arrest, and the, you know, obstructing a peace officer, but that he wasn't obstructing peace officer, he was standing in his yard, and again, this is the only probable cause the court found. So, I... Wait, in the appellant, was he convicted of this offense committed in the presence of the officer? Well, right, this is another issue, and that sort of goes to these evidentiary materials. Or was he presented evidence, well... Is there a conviction? There was a conviction, apparently, of a City of Lincoln ordinance. Our position is that, first of all, the defendants, the appellees, did not sufficiently, I mean, there was a purported transcript of colloquies and remarks of this plea colloquy that the court reported signature verification or anything like that. We don't have any idea what, when, or... Is there a conviction of record? I mean, if you go to the Lincoln courthouse, is there a conviction of record? There is a conviction of a City of Lincoln ordinance. There is a conviction, but I guess... The district court said, in its opinion, that the appellant played no contest, and he was convicted. Is that right? Yeah, I mean, that's, I guess, that's right what the district court said. I mean, I guess what we're trying to get into is this Heck versus Humphrey business. Is this a barring conviction? First of all, our position, my position as the appellant here, is that the appellees did not actually had anything at all to do with what Oglesby's claims, civil rights claims, are. Again, no signature of the court reporter regarding this purported colloquy of remarks made at this plea hearing, and they don't specifically show exactly when and where this occurred. Our position is that Oglesby was not inside the City of Lincoln at the time of the events giving rise to the claims in this case, and so, I mean, I don't know. I wasn't there. I don't, I wasn't the lawyer representing Oglesby at this hearing, but so that is our position, and again, getting into this Heck versus Humphrey business, if the claim is essentially temporally or conceptually distinct from the underlying conviction, then Heck doesn't bar the claim, and again, we have excessive force claims here, and I think the law is pretty clear that, you know, even if you have reasonable, you know, suspicion or probable cause to arrest somebody for committing an offense, you don't get to just, you know, beat them up. Right, but you started out your whole argument was about the seizure, and you said there was no probable cause. Yeah. And now it turns out he was convicted for violating the Lincoln Ordinance, if we accept that evidence, so why wouldn't Heck bar that claim, setting aside the excessive force? You mean the issue of the lawfulness of the arrest? Right. It's because it's my position that this conviction had, could not, did not, and could not have had anything to do with this claim, because A, the conviction that we're talking about was a conviction for violating a City of Lincoln Ordinance, and he wasn't inside the city at the time of the events giving rise to this lawsuit, and because, as you just noted, the evidence was not in proper form. I didn't note that. I didn't know that. Oh, I thought, well, you said that, well, you'd mentioned that aside the issues of the admissibility or something like that. I noted that you're arguing that, right? Would you like to save any of your time for rebuttal? Yes, and I'm down to less than two minutes, so I had two minutes, so I'll sit down. Thank you. Very well, thank you for your argument. Ms. Golden, we'll hear from you first, I gather, for Mr. Hine. Judges Malloy, Culliton, and Shepard, may it please the court, I am Jocelyn Golden, Assistant City Attorney with the City of Lincoln, and I am here on behalf of the Appellee, Chad Hine. The incident giving rise to this case involved a contact between Robert Oglesby and Deputy Lee Zan in Hickman, Nebraska, on January 28th, 2013, which should have led to a simple cite and release on a prior misdemeanor offense, but was instead escalated by Oglesby by his refusal to sign the citation, a flight into his home where weapons were reported to be, and a physical resistance to an arrest that left an officer injured. First, I would like to address the unlawful arrest claims made by Oglesby against both appellees. The court should find in favor of both appellees on the unlawful arrest claims because the officers had probable cause based on Oglesby's refusal to comply with Officer Hine's request to sign the citation, and based on Oglesby's resistance to arrest when he refused to sign the citation and began to flee towards his residence. And I would respectfully disagree with the argument by appellant regarding that the only probable cause was that there was that failure to comply. There was also a flight by Oglesby towards his residence, and in the case of United States vs. Sledge, fleeing to avoid arrest is probably the cause for arrest. Further, the unlawful arrest claims should be barred by Heck v. Humphrey due to Oglesby's no contest plea to hindering arrest, and that conviction was not appealed, overturned, expunged, or rendered invalid. And even though the court did not ultimately rule on Heck v. Humphrey, we think that's an alternate grounds for this court to rule that the unlawful arrest claims were properly ruled on summary judgment in favor of the appellees. And finally... Does the evidence show that it was the same incident that we're talking about here? Yes, and there are requests for omissions that were admitted to by Oglesby that he was cited for these three offenses, that he was ultimately convicted, and that he had a fine for that, and he served it out in jail. And so we believe Heck v. Humphrey squarely addresses this unlawful arrest claim, and that's another grounds for this court to rule that the unlawful arrest claims were properly granted summary judgment. How about the excessive force? I mean, one of the arguments they make, I think, is that even if there was probable cause to arrest him for refusing to sign this severe conduct, when all he said is, I'm not signing the citation, and walks into his house. Well, I think you have to look at the totality of the circumstances that were known to Officer Hine and Deputy Lee Sand at the time, which were that there were multiple dangerous person bulletins about Oglesby, that there were reports that there were weapons in his home, and that just one month prior, he had made threats to kill law enforcement officers. So both Officer Hine and Deputy Lee Sand had this information when Officer Hine arrived at the residence and started walking up the driveway. He had that knowledge, and his plan was he's going to have Oglesby sign that citation, and he's going to leave and go on his way, and hopefully that would be it. Unfortunately, Oglesby decides to engage in some disagreement with Officer Hine. He tells him that he doesn't have jurisdiction here, that he's outside the city limits, that he's trespassing, that he has no right to come into his residence or arrest him, and so Officer Hine engages in some back-and-forth, and finally gets to the point where he tells Oglesby, look, if you're not willing to just sign the citation, I'm gonna have to place you under arrest. At that point, Oglesby begins to flee towards the residence, and I believe there's a case law that says, you know, a single tasering of an individual because they're fleeing arrest does not result in unreasonable use of force. I believe that's McKinney, and then there's the case of Eilers versus the city of Rapid City, which also deals with kind of a failure to comply of an individual not complying with officers, and ultimately when that that individual is turning away, they use a taser on him, and the Eighth Circuit ultimately ruled that that was a proper use of a taser, and did not result in unreasonable force, and that the officer was entitled to qualified immunity in that case. Which case? I believe it's Eilers versus the city of Rapid City. Eilers, yeah. Yeah, Eilers. I didn't remember that. I didn't remember that involving a taser. It involves somebody being tackled in a parking lot. Right. Maybe there's a separate part. I think, I think there might be, I'm just looking at Judge Cutts opinion, and it does. Yeah. Was this, how was the excessive force issue argued in the district court? Honestly, Oglesby didn't really address the issue of excessive force in district court. His whole argument rests upon this, this argument that all of these issues occurred outside the city limits, and that Officer Hine didn't have jurisdiction, and therefore he didn't have probable cause, and therefore he should win on his claims against Officer Hine and Deputy Lisan. I think the case law is very clear. Oglesby has not presented any sort of case law to rebut Marks, Meyer, Virginia B. Moore, and, and I believe the unlawful arrest claim is very clear that that's resolved by Heck v. Humphrey. It's resolved by Marks, Meyer, and I think the court can also say, or also decide that the officer should also be entitled to qualified immunity, because at the time there was no violation of Oglesby's clearly established constitutional rights for unlawful arrest. Going on to the excessive force claims that were asserted against Officer Hine, I think the totality of the circumstances, based on what Officer Hine and Deputy Lisan knew at the time, they were trying to simply cite and release Oglesby, and it was Oglesby that elevated this situation into one that required a use of force. Officer Hine, Officer Hine's position is that he didn't use his taser until he, his leg was pinned in the door, and he's trying to prevent Oglesby from going further into the house to access these weapons that were reported. I think that's clear that, based on the totality of circumstances, based on the safety of both Officer Hine and Deputy Lisan, and any others that might be there, that they had sufficient reason to take, or take the force that they did to tackle Oglesby and to place him under arrest and handcuff him. And I would reserve, or I would therefore ask that, on behalf of Appley Chad Hine, that you affirm the district court's order awarding summary judgment on behalf of Appley Chad Hine. Thank you. Thank you, Ms. Golden. Mr. Durbin, we'll hear from you. Good morning. May it please the court, Dave Durbin, Deputy County Attorney, Lancaster County Attorney's Office for Appley, Lancaster County Sheriff's Deputy, Amy Lisan. We're here to ask this court to affirm the judgment of the district court granting summary judgment to Deputy Lisan on all claims against her. First, the district court correctly determined that Deputy Lisan did not seize Oglesby in Hickman, Nebraska. The Supreme Court precedent and circuit precedent made clear that officers may request identification and ask questions of individuals without any suspicion as long as they do not use coercion to induce cooperation. This court, in order to evaluate police citizen contacts like this, has evaluated a non-exhaustive factor test. When you apply to the facts of this case, it's clear that the district court's judgment was correct. Deputy Lisan parked her car 20 to 25 feet behind Oglesby. There's nothing in the record indicating that that limited his freedom of movement. She approached alone without any other officers. There's no facts in the record indicating she used any language or intonation indicating that compliance was necessary. She did not brandish or touch her car and Oglesby himself testified that he willingly provided his identification and that he willingly waited while she conducted her computerized records check. What do you mean by willingly? What exactly is the testimony? Did she command him to give the license? The questioning was whether... Was this a request? How would you put it? Well, go ahead. What was the evidence? The testimony was, the question was, were you willing to comply? She testified that he was. And I believe that our counsel, during the deposition, said, were you... They were talking over each other, but she said, were you willing to comply, in order to comply? And he said, no, in order to find out what was going on. So it wasn't so much that he was... He consistently said during his deposition, during our questioning, that she requested or asked. Later, there was a declaration submitted where he recharacterized those interactions as commands. We don't believe there's any facts on the record to support that there was intonation or language that would support that kind of characterization of Deputy Leeson's statements to Oglesby. Well, he... As I understand the testimony, she says to Oglesby something to the effect, can I see your driver's license? Yes. And he voluntarily gives it to her. Yes. And at that point, she says, wait. That's, as I understand, wait here while I run your license. Now, he's really not free to leave at that point, is he? Because two... For two reasons. One, he's... He's told her to wait, or she has told him to wait. So she... He would be violating the direct command. And secondly, if he were to leave and drive off, I suppose he could walk away. But if he were to drive off, he'd be violating Nebraska statute for driving without a license and registration because she's got it, right? Sure. Absolutely. Absolutely. So... So this... Telling a person to wait and then prohibiting the... Effectively prohibiting them from leaving in their vehicle for 15 minutes, is that a seizure? Well, we believe that the... We did not cite this in our brief. I'd like to draw the court's attention to the case of United States v. Slater, this court held, that when an individual voluntarily provides his identification to an officer, the reasonable officer may interpret that voluntary act as providing consent to conduct a brief computerized records check. And that's the question is 15 minutes brief? Well, Oldsby has stated variously in his pleadings and in his... In his testimony and other statements that it was between 10 and 15 minutes. And, you know, Carpenter, we believe, would answer that. In Carpenter, the officer took the identification back to his cruiser and conducted a four to five minute records check. And this court decided that that was not constitutionally significant for determining whether a seizure occurred. And here, given the other circumstances in this case, and Oldsby's admitted willingness to wait during that, we believe that this is no more constitutionally significant than that four to five minute exchange was in Carpenter. So what happens after she... After she runs the records check, she gives it back to him and tells him he's free to go? Correct. She hands back the identification. She indicates to him that he does have an LPD broadcast out for him. She expressly tells him that he is not under arrest. And she asked him where he was going, further implying that he was free to leave. And as the district court correctly recognized, he did just that. He left the scene. And secondly, even if this court determines that a seizure did occur at some point during this exchange, we believe that Deputy Leeson is entitled to qualified immunity. Now for the least reason is that Oldsby didn't even contest the issue of qualified immunity at the district court or even before this court until he finally stated today that she was not entitled to qualified immunity on this claim. But moreover, given Carpenter and given the facts in this case, it can't be said that she violated a clearly established constitutional right by crossing a bright line. At most, given all of these facts, it would be a bad guess in a gray area. Or put another way, we don't believe that the constitutional question regarding Deputy Leeson's actions here would be beyond debate. If there's any other questions on that issue, I can move on to another one. Secondly, we would just like to emphasize, as our versus Humphrey clearly decides the issue of probable cause, there's no genuine dispute of material fact that Oldsby was ultimately convicted for violating Lincoln Municipal Code section 908030 as a result of his actions during the incident giving rise to this claim. And Oldsby's entire theory of this case is that the Lincoln Municipal Code could not have applied to his actions because they occurred outside the city of Lincoln. Therefore, a in calling into question the conviction that's outstanding and there's been no favorable termination of that conviction. And finally, with respect to excessive force, I see that my time is running short, but I would just like to emphasize that the only uses of force attributed to Deputy Leeson in this case are handcuffing Oldsby while he was already on the ground and raising him from the ground after the handcuffing. And her technique in both of these cases was clearly within constitutional bounds. There was no violation of his constitutional rights, whether they were clearly established or not. And all of her actions are answered by the case of Blazek, which is cited in our brief. That's 761 F 3d 920. And if there's any other questions, I'll thank the court. Well, I think your argument about Hackfrey-Humphrey is a powerful one, but I am curious as to how you can be convicted of violating a municipality. I absolutely recognize that there is some dissonance there, but we believe that Hack versus Humphrey forecloses that argument that this should have been addressed through a separate procedure and it's not to be addressed as Hack versus Humphrey holds in the civil procedure as a collateral attack on a conviction that has not been favorably terminated in favor of Oldsby. So do you have an answer to the question on the merits of how a person can be convicted if their actions occurred in a different locality? Is there any answer to that? No, I don't believe that there's a very good answer to that, Your Honor. Do you think he might have some merit to that point if he took it up in the criminal case or in a collateral proceeding? Yes, we just believe this is not the venue to take up the argument. Okay, I understand that argument. I just wondered if you had an answer on that. Thank you for your argument and I will hear from Mr. Catlett in rebuttal. Looks like I have about a minute 47 left. Thank you. To address this business of non-violent, non-fleeing subjects and clearly established constitutional right to be free from police use of police tasers, the district judge found that twice refused to tell Lesson where he was going from Hickman saying it was none of her business. That's true. It wasn't any of her business. That he had ordered officers to leave his property because the actually that was an order that he had given essentially to Hines and he was right. He was a city cop. He was outside the city and that he had fled from the officers in the yard and you gotta remember here Oglesby in his evidentiary materials says that Hines tased him in his yard. There is a dispute as to when this tasing initially occurred. Hines says he didn't tase him until he was at the doorway and you know his foot was in the doorway. Oglesby's declaration is that he was tased in his yard, hands up. Here was another thing. In light of the officer's knowledge that plaintiff had been classified by a law enforcement agency as a dangerous because he possessed weapons. I mean one of the things that the district judge relied on was that Oglesby had apparently in a deposition had said something that he that the officers might have thought that the that he was trying to fight them and that he was quote tussling with the officers while they were attempting to arrest him. This is all later. Moreover, the deposition, oh my gosh, I'm out of time. Very well. Thank you for your argument. The case is submitted and the court will file an opinion in due course. Thank you to all counsel. Please call the next case for argument. 18-1614 Juan and Zunza Reyna vs. William P. Barr.